Millard Dale **JENNINGS,**
Petitioner–Appellant,

v.

Gary **MAYNARD;** Attorney General,
State of Oklahoma, Respondents–
Appellees.

No. 90–6374.

United States Court of Appeals,
Tenth Circuit.

Oct. 16, 1991.

Irven R. Box, of Box & Clowdus, Oklahoma City, Okl., for petitioner-appellant.

Susan Brimer Loving, Atty. Gen. of Oklahoma, and Alecia A. George, Asst. Atty. Gen., for respondents-appellees.

Before ANDERSON, TACHA, and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Petitioner-appellant Millard Dale Jennings appeals a district court order denying his petition for writ of habeas corpus. On appeal, Jennings argues that he was denied his Sixth Amendment and Fourteenth Amendment right to confront his accusers because the Oklahoma District Court ad-

mitted a statement given to an Oklahoma State Bureau of Investigation (OSBI) agent by a declarant who later refused to testify at trial. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's order.[1]

On July 2, 1984, two men broke into a residence in Perry, Oklahoma. The assailants woke the occupants of the house—who were husband and wife—and, at gunpoint, tied and blindfolded the husband. The assailants physically and sexually assaulted the wife and then shot her in the back of the head; the wife's skull deflected the bullet and she suffered only minor injuries. The two men also took jewelry and other property from the house.

During the subsequent investigation of the crime, OSBI agent David Page interviewed the victims' son-in-law, Charles Ballew. Ballew said that he had spoken to appellant Jennings about robbing the victims' home one to two weeks prior to commission of the crime. In particular, he told Page that he had explained to Jennings the unusual layout of the victims' home. After this interview, Jennings' fingerprints were matched with fingerprints found on a cereal bowl; the bowl had been removed from a china cabinet but was left in the victims' house.

At the preliminary hearing prior to Jennings' criminal trial, the prosecution called Ballew to testify regarding the subject of the conversation he had with Agent Page. At that hearing, Ballew invoked his Fifth Amendment privilege against self-incrimination and refused to testify. Later, before the prosecutor's opening statement at trial, the state district court held an in camera hearing to decide whether Ballew was an "unavailable" witness in order to determine whether Agent Page could testify concerning Ballew's out-of-court statements. At that hearing, both the prosecutor and the court asked Ballew whether he would testify about his conversations with defendant Jennings or with Agent Page.

He candidly stated that he would not testify because, on two occasions, unidentified men had threatened that the lives of Ballew and his family would be in danger if Ballew testified. At the conclusion of this hearing, the court held that Ballew's refusal to testify made him an "unavailable" witness; the court also concluded that the threats must have come from Jennings because no one else had an interest in Ballew's failure to testify.

At trial, the state district court allowed Agent Page to testify concerning his conversation with Ballew. Jennings was convicted and is currently serving sentences for burglary, armed robbery, kidnapping for extortion, assault with the intent to commit sodomy, and shooting with the intent to kill. On direct appeal, Jennings argued that the admission of Agent Page's testimony about Ballew's incriminating out-of-court statement violated his right to confront and cross-examine his accusers. The Oklahoma Court of Criminal Appeals, after considering the Confrontation Clause issue, affirmed the convictions. After exhausting state habeas remedies, Jennings petitioned for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma. The district court denied a certificate of probable cause, 28 U.S.C. § 2253, and in forma pauperis status on appeal, 28 U.S.C. § 1915(a).

We review an issue of unavailability under the Confrontation Clause de novo. *Cole v. Tansy,* 926 F.2d 955, 957 (10th Cir.1991). On review of a habeas corpus petition from a state court conviction, a state court's findings of fact in admitting an out-of-court statement pursuant to a state rule of evidence are subject to a presumption of correctness. *See* 28 U.S.C. § 2254(d)(8); *Martinez v. Sullivan,* 881 F.2d 921 (10th Cir.1989), *cert. denied,* 493 U.S. 1029, 110 S.Ct. 740, 107 L.Ed.2d 758 (1990).

The Supreme Court has held that to protect a criminal defendant's Sixth Amend-

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.

R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

ment and Fourteenth Amendment right to confront witnesses, hearsay evidence will be admitted against a defendant only if the government shows (1) that the witness is unavailable and (2) that the statement bears sufficient indicia of reliability. *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). The Court in *Roberts* further stated that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539. When evidence does not meet such a hearsay exception, the Court implied that other "particularized guarantees of trustworthiness" may justify admission of the evidence. *Id.*

█ Although the rules of evidence are helpful in determining whether Confrontation Clause rights are violated, on habeas corpus review "we need not address whether hearsay evidence was properly admitted under the [Oklahoma Evidence Code] or whether admission would have been proper under the Federal Rules of Evidence; rather our inquiry is whether the admission of hearsay evidence deprived [the defendant] of his rights under the Sixth Amendment to confront and cross-examine the witnesses against him." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1201 (10th Cir.1989), *cert. denied,* ── U.S. ──, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990). The burden of demonstrating unavailability for the admission of a hearsay statement rests on the state. *Cole*, 926 F.2d at 957; *Martinez*, 881 F.2d at 924.

█ In this case, Ballew—in response to questions by both the judge and prosecutor during an in camera hearing—stated that he would not testify if called at trial. Refusal to testify is a well-established ground for unavailability under both the Oklahoma Evidence Code, Okla.Stat. tit. 12, § 2804, and under the Federal Rules of Evidence, Fed.R.Evid. 804(a)(2). Jennings contends that Ballew did not meet the definition of "unavailability" under the Oklahoma Evidence Code because the court did not order Ballew to testify. *See* Okla.Stat. tit. 12, § 2804 (witness unavailable if he "[p]ersists in refusing to testify ... despite an

order of the court to do so"). Although both the Oklahoma Code and Federal Rule 804(a)(2) normally require the court to order a witness to testify before a finding of unavailability is made, we conclude that such an order was not necessary in this case. During the in camera hearing, Ballew testified that he would not obey a court order requiring him to testify. Further, the trial court determined that Ballew's reason for refusing to testify—that threats which most likely came from Jennings were made against Ballew and his family—made an order to testify inappropriate. Most importantly, the trial court did not order Ballew to testify because Ballew would have stated that he had been threatened. Such a statement made in the presence of the jury would have prejudiced the defendant's right to an impartial jury. Given these circumstances, Ballew's refusal to testify even absent a court order made him "unavailable" for Confrontation Clause purposes.

█ Because we find that Ballew was unavailable, we next must determine whether his out-of-court statement bears sufficient indicia of reliability to be admitted without violating the Confrontation Clause. The state district court, the Oklahoma Court of Criminal Appeals, and the federal district court each individually held that the reliability of Ballew's statement may be inferred because the statement falls within the firmly rooted hearsay exception commonly referred to as the statement-against-interest exception. This rule of evidence provides that out-of-court statements that subject the declarant to criminal liability are admissible if a reasonable person in the declarant's position would not have made the statement unless she believed it to be true. Fed.R.Evid. 804(b)(3); Okla.Stat. tit. 12, § 2804(B)(3). Both the Oklahoma District Court and the Oklahoma Court of Criminal Appeals concluded that under Oklahoma law, Okla.Stat. tit. 22, § 172, Ballew potentially subjected himself to criminal liability as a principal in the crime when he told Agent Page that he had recommended what house Jennings could rob and that he had given instructions to

facilitate the crime's commission. We agree.

Jennings has persistently argued that Ballew's testimony is unreliable because Ballew is an unindicted codefendant who made the statement with the intent to exculpate himself. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Our review of the record reveals no such motivation on Ballew's part. Because there were two perpetrators, it would make little sense for Ballew to exonerate himself by pointing to a single perpetrator. In addition, there is no indication in the record that Ballew was a prime suspect or that the state ever attempted to prosecute him as a co-defendant. Jennings also asserts that Ballew did not believe that his statement to Agent Page would subject him to criminal liability and, therefore, is not a statement against interest. As noted above, Ballew pointed to only one perpetrator when he knew there were two perpetrators. Ballew's statement to the agent also revealed that he and Jennings had discussed breaking into the victims' home. Further, the Agent warned Ballew that he could be subject to criminal liability and read Ballew his Miranda rights. Given these facts, we conclude that Ballew's statement "so far tended to subject him to ... criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." Fed.R.Evid. 804(b)(3).

Jennings further contends that the statement-against-interest exception was not met because the prosecutor failed to give sufficient advance notice that he would use the out-of-court statement. According to Jennings' reading of the Oklahoma Evidence Code, a party must give advance notice in order to admit evidence under the statement-against-interest hearsay exception. The text of the rule is arguably ambiguous as to whether the notice requirement applies only to the catchall hearsay exception in section 2804(B)(5) or, alternatively, applies to all of the exceptions listed under section 2804(B), including the statement-against-interest exception.

Okla.Stat. tit. 12, § 2804. However, we need not resolve this ambiguity because even if the notice requirement is relevant for admission under Oklahoma evidence rules, it is irrelevant for determining whether a statement bears sufficient indicia of reliability to satisfy demands of the Confrontation Clause.

In addition to finding that Ballew's statement falls within a firmly rooted hearsay exception, we also note that other indicia of reliability clearly support the trustworthiness of Ballew's statement. First, the fact that investigators found Jennings' fingerprints on bowls removed from the victims' china cabinet strongly corroborates the inference drawn from Ballew's statement that Jennings participated in the crime. The victims' testimony about the facility with which the perpetrators broke into the home, made their way directly to the bedroom, and immediately asked for jewelry coincides with Ballew's statement regarding the substance of what he revealed to Jennings concerning the layout of the victims' home. Second, the reason for Ballew's refusal to testify—because he received threats—itself adds credibility to Ballew's statement. These threats occurred after Jennings' arrest and prior to his trial and specifically referred to Ballew's testifying at trial. The occurrence of the threats themselves suggests that Ballew indeed was privy to information that could be damaging to Jennings. In summary, the existence of corroborating evidence and the reasons for Ballew's unavailability provide indicia of reliability in addition to the inference of reliability we draw because the testimony at issue falls within a well-established hearsay exception. Therefore, we conclude that admission of his statement does not violate Jennings' Confrontation Clause rights.

Finally, Jennings contends that prior to trial "the prosecutor, Ballew and his attorney met in chambers of the trial judge to discuss a method to introduce Ballew's testimony." We conclude that this contention of improper ex parte communications is unsupported by the record and is therefore without merit.

Given the complexity of the issues surrounding the case, we GRANT petitioner Jennings' request for a certificate of probable cause, we GRANT his motion to proceed in forma pauperis, and we AFFIRM the district court's judgment denying relief.